The IRVING–CLOUD PUBLISHING COMPANY

v.

CHILTON COMPANY.

Civ. A. No. 78–923.

United States District Court, E. D. Pennsylvania.

Dec. 11, 1978.

C. Marshall Dann, Philadelphia, Pa., James R. Sweeney, Chicago, Ill., for plaintiff.

John J. Runzer, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

The Irving-Cloud Publishing Company ("Irving-Cloud") brought this action against defendant Chilton Company ("Chilton") alleging statutory trademark infringement, in violation of the Lanham Trade-Mark Act of 1946, 15 U.S.C. § 1051 *et seq.*, and common law unfair competition. The jurisdiction of this Court is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1332, 1338 and the amount in controversy is alleged to exceed $10,000, exclusive of interest and costs. Presently before the Court is the motion of Irving-Cloud for a preliminary injunction,[1] pursuant to Fed.R.Civ.P. 65, to enjoin Chilton from using the words "the HARD-LINES MERCHANDISING magazine" or any other colorable imitation of Irving-Cloud's registered trademarks "HARD-WARE MERCHANDISER" and "HARD-LINES WHOLESALING." For the reasons stated below, Irving-Cloud's motion will be denied.

The pertinent facts underlying this dispute are as follows: Irving-Cloud, a Delaware corporation with a principal place of business in Illinois, is a publisher of a wide range of industrial publications, including magazines directed to the retail and wholesale hardware trade. One of Irving-Cloud's publications is the "Hardware Merchandiser," a magazine for the retail hardware trade, and for which Irving-Cloud owns the registered trademark "HARDWARE MER-CHANDISER."[2] Irving-Cloud also publishes "Hardlines Wholesaling," a publication formerly distributed to the wholesale hardware trade, and for which Irving-Cloud

---

1. Irving-Cloud's complaint also seeks permanent injunctive relief, an order directing Chilton to deliver for destruction all items bearing the allegedly infringing mark, an accounting of the profits realized by Chilton from its use of the allegedly infringing mark and other profits, damages and costs. On May 8, 1978, Chilton filed a counterclaim against Irving-Cloud for cancellation of Irving-Cloud's registered trademarks, pursuant to section 37 of the Lanham Trade-Mark Act, 15 U.S.C. § 1119.

2. Irving-Cloud's incontestable "HARDWARE MERCHANDISER" trademark was registered on August 14, 1962, under the registration number 736,056.

owns the registered trademark "HARD-LINES WHOLESALING."[3] Since 1977, Irving-Cloud has distributed "Hardlines Wholesaling" only as a quarterly insert within the issues of the monthly "Hardware Merchandiser."

Chilton, a Delaware corporation with a principal place of business in Pennsylvania, is a competitor of Irving-Cloud. Since July 1, 1971, Chilton has published a magazine entitled "Hardware Age," for which Chilton owns and uses the composite trademark "HARDWARE AGE—the HARDLINES MERCHANDISING magazine" ("the composite mark").[4] On August 11, 1971, Chilton filed an application with the United States Patent and Trademark Office (U.S. Patent Office") to register the trademark "THE HARDLINES MERCHANDISING MAGAZINE."[5] On May 22, 1973, Chilton's trademark "THE HARDLINES MER-CHANDISING MAGAZINE" was registered on the Supplemental Register pursuant to 15 U.S.C. § 1091.[6] After Chilton's mark was registered on the Supplemental Register, Irving-Cloud commenced an action in the U.S. Patent Office to cancel the trademark, pursuant to 15 U.S.C. § 1092.[7]

During the pendency of the cancellation proceedings Chilton filed an application with the U.S. Patent Office to register the composite mark "HARDWARE AGE—the HARDLINES MERCHANDISING magazine," which mark was registered on the Principal Register on December 28, 1976. On November 29, 1977, the Trademark Trial and Appeal Board ("the Board") of the U.S. Patent Office cancelled Chilton's "THE HARDLINES MERCHANDISING MAGA-ZINE" registration from the Supplemental Register on the grounds that the mark was likely to cause confusion, mistake or deception with respect to either of Irving-Cloud's trademarks. As a result of the Board's decision, Chilton has terminated any independent use of the mark "THE HARD-LINES MERCHANDISING MAGAZINE." However, Chilton has continued to use its composite mark which utilizes in small print the words "the HARDLINES MERCHAN-DISING magazine."

▮▮▮ The thrust of Irving-Cloud's complaint is that Chilton's continued use of the words "the HARDLINES MERCHANDIS-ING magazine" as part of its composite

---

**3.** Irving-Cloud's "HARDLINES WHOLESAL-ING" trademark was registered on January 22, 1974, under the registration number 977,325.

**4.** Chilton's composite mark was registered on December 28, 1976, under the registration number 1,055,080.

**5.** Chilton's trademark was registered on the Supplemental Register on May 22, 1973, under the registration number 959,582.

**6.** 15 U.S.C. § 1091 provides, in pertinent part:
In addition to the principal register, the Commissioner shall keep a continuation of the register . . . to be called the supplemental register. All marks capable of distinguishing applicant's goods or services and not registrable on the principal register provided in this chapter, except those declared to be unregistrable under paragraphs (a)–(d) of section 1052 of this title, which have been in lawful use in commerce by the proprietor thereof, upon or in connection with any goods or services for the year preceding the filing of the application may be registered on the supplemental register upon the payment of the prescribed fee and compliance with the provisions of section 1051 of this title so far as they are applicable.

\* \* \* \* \* \*

For the purposes of registration on the supplemental register, a mark may consist of any trade-mark, symbol, label, package, configuration of goods, name, word, slogan, phrase, surname, geographical name, numeral, or device or any combination of any of the foregoing, but such mark must be capable of distinguishing the applicant's goods or services.

**7.** 15 U.S.C. § 1092 provides, in pertinent part:
. . . Whenever any person believes that he is or will be damaged by the registration of a mark on this register he may at any time, upon payment of the prescribed fee and the filing of a verified petition stating the ground therefor, apply to the Commissioner to cancel such registration. The Commissioner shall refer such application to the Trademark Trial and Appeal Board which shall give notice thereof to the registrant. If it is found after a hearing before the Board that the registrant was not entitled to register the mark at the time of his application for registration thereof, or that the mark is not used by the registrant or has been abandoned, the registration shall be canceled by the Commissioner.

mark constitutes trademark infringement of Irving-Cloud's registered trademarks and unfair competition. The issue before us is whether Irving-Cloud has met its burden of establishing that a preliminary injunction should issue to enjoin Chilton from using the words "the HARDLINES MERCHANDISING magazine" in its composite mark. The traditional standard for granting a motion for a preliminary injunction requires the movant to show that, in the absence of its issuance, he will suffer irreparable injury and he is likely to prevail on the merits. *Doran v. Salem Inn*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). In ascertaining the propriety of a preliminary injunction, the Third Circuit has identified four factors which the district court must examine and balance, whereby the movant must generally show: (1) a reasonable probability of eventual success in the litigation; (2) irreparable injury *pendente lite* if relief is not granted; when relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. *Constructors Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 814–815 (3d Cir. 1978). Although these factors guide our inquiry, no one component will necessarily determine the outcome because the propriety of the issuance of a preliminary injunction requires a balancing of all of the elements. *Id.* at 815; *cf. Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 194–195 (4th Cir. 1977).

### *PROBABILITY OF EVENTUAL SUCCESS*

1. *The Cancellation Proceeding*: On April 28, 1978, at the hearing scheduled for Irving-Cloud's motion for a preliminary injunction, Irving-Cloud argued that the Board's decision to cancel Chilton's mark "THE HARDLINES MERCHANDISING MAGAZINE" from the Supplemental Register on the grounds that it was confusingly similar to its registered marks is legally dispositive of the issues raised in this litigation. Although Irving-Cloud concedes that the Board's cancellation decision has no effect upon Chilton's subsequent *use* of the

words in its composite mark, Irving-Cloud argues that the plain meaning of the decision, as based upon a finding of the likelihood of confusion, demonstrates that such use infringes upon its trademarks and constitutes unfair competition. Chilton's response is twofold: (1) it argues that the Board's decision merely cancelled the mark "THE HARDLINES MERCHANDISING MAGAZINE" from the Supplemental Register; and, (2) that Irving-Cloud cannot enjoin Chilton from using such words in its composite mark because the composite mark *per se*, as one properly registered on the Principal Register and protected by the rebuttable statutory presumptions of ownership and validity, has never been the subject of a cancellation proceeding.

First, the administrative decision of the Board to cancel a trademark from the Supplemental Register does not enjoin the subsequent use of that mark in commerce. Consequently, the decisions of the Board to cancel trademarks are not binding upon a court of equity in litigation to determine the rights of usage of trademarks. *See Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970); 3 Callman, *Unfair Competition, Trademarks and Monopolies*, § 86.1(b), p. 1065 (3d Ed. 1970). We find, therefore, that the Board's conclusion in its cancellation decision that Chilton's "THE HARDLINES MERCHANDISING MAGAZINE" trademark is confusingly similar to Irving-Cloud's registered trademarks cannot be legally dispositive of the issues of trademark infringement and unfair competition in this case. Second, as further support for our finding, it is clear from the Board's decision that it did not consider the use of the words "THE HARDLINES MERCHANDISING MAGAZINE" as part of Chilton's composite mark. In its November 29, 1977, decision, the Board stated:

Respondent [Chilton] has also referred in its brief to the fact that it has always used its involved mark in close proximity with the mark "HARDWARE AGE." However, such usage cannot be considered in resolving the question of likeli-

480

hood. of confusion presented herein since respondent's registration is for the designation "THE HARDLINES MERCHANDISING MAGAZINE" alone. See: *Frances Denney v. Elizabeth Arden Sales Corporation*, 120 USPQ 480 (CCPA 1959). [Opinion, at 6 n. 6.]

The Board's explicit refusal to consider this issue, the crux of this litigation, diminishes the weight which may have been given to the decision in a court of equity. We find, therefore, that the decision of the Board to cancel one Chilton trademark, without more, does not demonstrate that Irving-Cloud is likely to prevail on the merits of a suit alleging trademark infringement and unfair competition from Chilton's use of a different trademark.

■ 2. *Chilton's Counterclaim* : Chilton also argues that Irving-Cloud is not likely to prevail on the merits in this case, because Chilton has filed a counterclaim for the cancellation of Irving-Cloud's trademarks.[8] The validity of a trademark registered under the Lanham Trade-Mark Act may be collaterally attacked as a defense to a trademark infringement complaint. *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*, 339 F.Supp. 973, 980 (M.D.Tenn.1971), aff'd, 470 F.2d 975 (6th Cir. 1972) (per curiam). In this case, Chilton's counterclaim for cancellation of Irving-Cloud's registered trademarks alleges that the marks are inherently nonregistrable because the words "hardware," "merchandiser," "hardlines" and "wholesaling" are generic and descriptive, and because no secondary meaning could attach to Irving-Cloud's use of such words. Chilton argues that, because the entire industry uses these terms in a generic and descriptive manner, Irving-Cloud cannot claim the exclusive use of such words in its marks. Accordingly, Chilton argues that Irving-Cloud's registrations should be cancelled and that, therefore, Irving-Cloud is not likely to prevail on the merits of this case. In response, Irving-Cloud argues that its registered trademarks

are not merely generic and descriptive and are, therefore, not subject to cancellation by Chilton's collateral attack. Because a preliminary injunction will not issue where difficult questions of law and fact are in dispute, *John J. & Warren H. Graham v. Triangle Publications*, 233 F.Supp. 825, 829 (E.D.Pa.1964), aff'd, 344 F.2d 775 (3d Cir. 1965), we find, on the basis of the record before us, that Irving-Cloud cannot demonstrate a reasonable probability of eventual success in this litigation.

## IRREPARABLE INJURY

■ The applicant for a preliminary injunction bears the burden of establishing a right to such injunctive relief and that irreparable injury will result to him if it is not granted. *A. O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir. 1976). Serious or substantial injury is insufficient to warrant the issuance of a preliminary injunction. *Id.* at 525. In light of the possibility of harm that might ensue to other interested persons from the granting or denial of the injunction, the district court must balance the hardships to determine whether an injunction should issue or, more specifically, the probability of irreparable injury to the movant without a decree balanced with the possibility of harm to the opponent with a decree. *Constructors Association of Western Pennsylvania v. Kreps, supra*, 573 F.2d at 814–815; *Blackwelder Furniture Co. v. Statesville, Inc. v. Seilig Mfg. Co., Inc., supra*, 550 F.2d at 196. In this case, Irving-Cloud alleges in its complaint that Chilton's continued trademark infringement and unfair competition "has caused and is continuing to cause great and irreparable harm and damage to Plaintiff and for which Plaintiff has no adequate and complete remedy at law." In its memorandum in opposition to Irving-Cloud's motion for a preliminary injunction, Chilton alleges that it will cost approximately $250,000 to amend all the magazines and materials within its existing

8. The Court notes that, although Chilton did not counterclaim for the cancellation of Irving-Cloud's registrations at the cancellation proceeding before the Board, Chilton may assert

such a claim before this Court. *Cf. Jenkins Publishing Co. v. Metalworking Publishing Co.*, 139 U.S.P.Q. 346, 347 (TTAB 1963).

inventory which bear the composite mark if a preliminary injunction is issued. We find, on the record before us, that Irving-Cloud has not demonstrated an irreparable injury or an imbalance of hardship which, in light of the elements of likelihood of success on the merits and the public interest, warrants the issuance of a preliminary injunction.

*PUBLIC INTEREST*

Finally, the Court must consider, when relevant, the factor of public interest in the determination of the issuance of a preliminary injunction. The intent of the Lanham Trade-Mark Act, 15 U.S.C. § 1051 *et seq.*, is, *inter alia*, to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of trademarks in commerce, and to protect the registrants of trademarks against unfair competition. 15 U.S.C. § 1127. We find that, in light of the record before us with respect to the merits of the alleged trademark infringement and unfair competition, the Congressional intent of the Lanham Trade-Mark Act, in conjunction with the public interest for the enforcement of the trademark laws, would not be best served at this time by the issuance of a preliminary injunction.

Upon consideration of the above factors, we find that the balance of hardship does not tip so heavily in favor of the plaintiff as to warrant the issuance of injunctive relief at this time. Irving-Cloud's motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65 will, therefore, be denied.