57 CCPA

**WITCO CHEMICAL COMPANY, Inc.,**
**Appellant,**

**v.**

**WHITFIELD CHEMICAL COMPANY,**
**Inc., Appellee.**

**Patent Appeal No. 8207.**

United States Court of Customs
and Patent Appeals.

Dec. 18, 1969.

Sidney Wallenstein, Chicago, Ill., attorney of record, for appellant. Ben Cohen, Washington, D. C., Charles B. Spangenberg, Chicago, Ill., of counsel.

William C. McCoy, Jr., Robert D. Hart, McCoy, Greene & Howell, Cleveland, Ohio, for appellee.

Before RICH, Acting Chief Judge, MATTHEWS, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 153 USPQ 412 (1967), in consolidated proceedings, Opposition No. 41,512 and Cancellation No. 7,847.[1]

The opposition involves appellee's application serial No. 102,271, filed Aug. 8, 1960, to register, on the Principal Register, WHIT CHEM (with design of a retort, all inside a hexagonal border) as a trademark for "Compositions Used in the Coating and Protecting of Spray Booths and Other Surfaces." First use April 4, 1956, is claimed.

The cancellation involves appellee's registrations No. 718,010, July 4, 1961, of WHIT–KLEEN for "Detergent Cleaner Solution for General Maintenance Cleaning of Painted Metallic or Ceramic Surfaces," claiming first use August 13, 1956, and No. 718,699, July 18, 1961, of WHITSOL for "Detergent Solvent Cleaners for Removal of Oil, Grease, Drawing and Buffing Compounds for Aluminum and Other Metals," claiming first use May 5, 1960.

On the basis of a lengthy, accurate, and detailed opinion analyzing the evidence and the contentions of the parties, fully reported in the USPQ, the board dismissed the opposition and denied the petition to cancel. We affirm on the basis of the board's opinion since we find no reversible error therein. We see no reason to repeat its full analysis and will confine our observations to the alleged error, stating only enough of the case to make them clear.

Opposer-Petitioner is Witco Chemical Company, Inc., purveyors of a variety of industrial chemicals, with a gross business of over a hundred million dollars in 1961. It advertises in a large number of trade papers appropriate to its fields of interest and is known in the trade as "Witco." It has been known to happen that correspondents have misspelled its name and addressed letters to it as "Whitco Chemical Co." It owns registrations of WITCO and some nine other marks beginning with WIT– or WITCO– for its various products.

Applicant-Appellee, the owner of the registrations sought to be cancelled, sells an essentially different line of industrial chemicals under the marks referred to above. It too has a substantial business in which it has been engaged since 1948. The business was initially that of Chester Whitfield Smith doing business as Whitfield Chemical Company. There was an affiliated corporation, Whitfield Chemical Company, Incorporated, of which Smith was president. Appellee's brief advises us that all trademark rights and the goodwill of the business are now in the hands of Whitfield Chemical Company, Inc.[2] and that Mr. Smith died in January 1968. The corporation has been substituted in these proceedings by stipulation approved November 18, 1968. Appellee's products are principally industrial metal cleaners and to a less extent protective metal-coating compounds.

---

1. The board also had before it, and decided, another opposition, No. 41,407, which it dismissed, involving trademark application serial No. 102,270 to register the same mark involved in the appealed opposition for a chemical composition used in the cleaning of metals, claiming first use May 1, 1952. That decision was not appealed.

2. Assignment recorded in the Patent Office Nov. 27, 1967, reel 156, frame 741, some months after the board's decision herein.

They have been advertised in a different and smaller group of trade papers than those used by appellant.

Of some significance is appellee's ownership of an incontestable registration of substantially the same mark it now seeks to register, Reg. No. 564,609, Sept. 30, 1952, claiming first use on Feb. 18, 1948, for "Chemicals Used for Industrial Metal Cleaning Processes." According to the board, the section 8 affidavit was accepted and the section 15 affidavit received (15 U.S.C. §§ 1058(b) and 1065). The registered mark and the mark here sought to be registered are both illustrated in the board's opinion where it can be seen that the only difference in the marks is that in the latter there are short legs under the retort.

An important fact in this case is that the goods of both parties are carefully selected by technically trained people, chemists or engineers, to suit particular industrial processes, and obtained either by them or through purchasing agents.

The board summarized the conclusions it reached on the record as follows:

Considering therefore the nature and character of the goods of the parties and the differences between them and both the channels of trade and the usually intended purchasers; the fact that these goods are ordinarily selected by informed and discriminating persons; the differences between the respective trade designations used in connection with the sale of these goods; there has been no competent evidence of actual confusion arising from the contemporaneous use of these marks over the years in what opposer broadly calls the "chemical field"; and insofar as the registration of "WHIT-CHEM" and design for chemical composition used in the cleaning of metal is concerned, applicant is the owner of an incontestable registration for a substantially identical mark for substantially similar goods, it is concluded that there is no reasonable likelihood

of confusion in trade, with resultant damage to opposer.

■ Appellant predicates its arguments in both opposition and cancellation on section 2(d) (15 U.S.C. § 1052(d)). The familiar words of that section here involved are: "*so* resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, *as to be likely,* when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive * * *." (Emphasis ours.) This requires, of course, that we consider not only the marks but the goods and the whole situation, as revealed by the record, as it bears on their distribution in the market. When this situation has been absorbed, we then have to form a judgment as to whether there is a practical likelihood of such confusion, mistake, or deception as would damage the opposer or petitioner to cancel. We are not concerned with mere theoretical possibilities of confusion, deception, or mistake or with de minimis situations but with the practicalities of the commercial world, with which the trademark laws deal.

■ Appellant's brief accurately and appropriately comments:

No citation of adjudicated cases in support of Appellant's position is believed in order since the fundamental basis for this Honorable Court's decision must be determined in the light of the particular facts of the present case.

It is, after all, a matter of judgment and appellant's position is, fundamentally, that the board exercised a wrong judgment, not that it was in any way mistaken about the law or the important facts. We are not disposed to overturn the unanimous judgment of the board in a case such as this one where judgments may differ but in which it appears to have done a careful job and where there is substantial support in the record for what it has done.

Appellant's brief lists four alleged errors by the board which we will now consider.

The first alleged error is that the board held that the record failed to establish recognition by the trade that appellant possesses a "family" of marks identified by the prefix WIT–. We are unable to see how this is of particular significance since appellee is not seeking to register, and has not registered, a mark beginning with WIT–. However, in appellant's own words, the board found that "the record fails to establish *recognition by the purchasing public* that Appellant possesses a 'family' of marks *identified by this prefix*" (our emphasis) and that such public recognition is necessary. We agree with the board's conclusions. See Polaroid Corp. v. Richard Mfg. Co., 52 CCPA 978, 341 F.2d 150 (1965). Reading appellant's brief we are somewhat in doubt as to what is attempted to be made of the alleged existence of a "family" of marks since the argument appears to peter out in the statement, "Whether this identification [of probable source] comes from a strict 'family' of marks situation or otherwise is not material. It is the fact of such identification that is important." Appellant conceded it is but "one of a number of factors to be evaluated in determining whether there properly exists a basis for asserting such exclusivity," the reference being to exclusive rights in "WIT prefix marks" in the chemical field. In conclusion on this assertion of error, we cannot find in the board's refusal to hold that the existence of a "family" of marks had been established any basis for reversal, either legally or factually.

The second alleged error is the board's holding that, considered in their *entireties*, appellant's WIT– prefix marks and appellee's WHIT– prefix marks "are readily distinguishable in sound, appearance, and possible suggestive significance." Independently of the "family" argument, appellant compares appellee's three marks, WHIT CHEM, WHIT–KLEEN, and WHITSOL, only with its WITCO mark and name. We agree with the board they are readily distinguishable. The marks must be considered as a whole. Furthermore, the question of distinguishability is closely related to the statutory issue of likelihood of confusion, mistake, or deception and for reasons similar to those taken into account in applying the statute to the facts it is necessary to consider *who* is going to do the distinguishing. We think the probable purchasers of the goods of the parties here would have no difficulty whatever in this regard.

The third alleged error is that the board was wrong in finding appellant and appellee to be in distinctly different branches of the chemical industry, selling to essentially different purchasers through different channels for different purposes and advertising in different types of trade publications. We find that for the most part this statement is true and that the board was fully cognizant of such exceptions to that finding as did exist. Appellant recognized the board's awareness of the exception by quoting its statement:

> There appears to be an overlapping of activities only to the extent that opposer sells its "WIT–COTE" asphaltic coating to the automobile industry for application to the undercarriage of automobiles and applicant sells a number of its compounds to the same industry for metal cleaning prior to machining.

We do not think these facts are going to result in confusion as to source by the automobile industry.[3]

---

3. While we do not wholeheartedly accept as significant the board's rationale that the products of the parties will be used at different ends of the automobile production "spectrum," except as it may bear on confusion of *products* in the factory, which may be what the board had in mind, we cannot regard this mere rationale as a reversible error.

The fourth and last error alleged is the holding of no reasonable likelihood of confusion in the trade, with resultant damage to appellant. This is merely the ultimate conclusion of law and requires no discussion.[4]

The decision of the board is affirmed.

Affirmed.

4. Appellee's brief has called our attention to two other oppositions brought by appellant against a third party, dismissed by the board, and at the argument appellant called attention to another one in which its opposition was sustained. None of these cases has a direct bearing on the present case but we refer to them as of interest. The present board decision antedates these decisions. Witco Chemical Co. v. The Chemische Werke Witten G.M.B.H., Opp. No. 42,425, 157 USPQ 644; Opp. No. 42,421, 157 USPQ 647; Opp. No. 45,003, 158 USPQ 157.