HAN BEAUTY, INC. and Trevive, Inc., Appellants,

v.

ALBERTO–CULVER COMPANY, Appellee.

Nos. 00–1198, 99,090.

United States Court of Appeals, Federal Circuit.

Jan. 9, 2001.

Lori N. Boatright, Blakely, Sokoloff, Taylor & Zafman, LLP, of Los Angeles, CA, argued for appellants. With her on the brief were Eric S. Hyman, and Charles T.J. Weigell.

Raymond I. Geraldson, Jr., Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, of Chicago, IL, argued for appellee. With him on the brief were Douglas N. Masters, and Bradley L. Cohn.

Before NEWMAN, MICHEL, and RADER, Circuit Judges.

RADER, Circuit Judge.

The Patent and Trademark Office Trademark Trial and Appeals Board (the Board) sustained Alberto–Culver Co.'s opposition to Han Beauty Inc.'s application for registration of the mark TREVIVE NUTRIENTS FOR THE LIFE OF YOUR HAIR and design (the TREVIVE mark). Because substantial evidence supports the Board's likelihood of confusion findings, and because the Board's conclusion is correct, this court affirms.

I.

In 1959, Alberto–Culver and its predecessors acquired the rights to use the mark TRESEMME for hair spray, permanent wave, hair conditioners, hair thickeners, wig sprays, crème lotion developer, wig cleaners, and hair shampoos. The TRESEMME mark has enjoyed continuous use since that time.

From the early 1960's until about 1980, Alberto–Culver used several other marks with the TRES—prefix, namely TRES-NET for hair spray, TRESLAK for lacquer, and TRESOXIDE for peroxide. In the mid 1970's, Alberto–Culver began marketing the mark TRESPAC for protein hair conditioning treatment, and has continued use of that mark to the present.

From 1984 to 1986, Alberto–Culver introduced products bearing the following marks: TRESGELEE for hair styling gel; TRESSPRAY for hair styling and sculpting spritz; TRESWAVE for hair permanent wave preparations; TRESMEND for hair conditioner; and TRESGLAZE for hair styling and sculpting liquid. These marks appeared with the word "European" on the labels of black containers. In the late 1980's and early 1990's, Alberto–Culver introduced TRESLIFT for hair volumizer, TRESHOLD for hair spray, and TRESSHINE for hair conditioning mist for treating frizzy hair.

Alberto–Culver owns trademark registrations for TRESEMME, TRESPAC, TRESSPRAY, TRESGELEE, TRES-WAVE, and TRESHOLD. Alberto–Culver sells the TRES—products as part of a TRESEMME product line with the TRE-SEMME mark appearing on the packaging of all products in the line. From 1984 to 1996, Alberto–Culver expended over $20 million in advertising its TRES—prefix marks, promoting the TRES—product line through advertisements in publications and through television and radio commercials. Alberto–Culver sells its products through distributors to retail outlets for direct sales to consumers, and to beauty salons for use in the salons and for resale to salon customers. From 1977 to 1996, Alberto–Culver sold over $450 million in hair care products under its TRES—prefix marks.

Han Beauty applied for the TREVIVE mark (shown below) for "hair care products, namely hair shampoo, hair conditioning, hair gel, and hair spray" in May 1994.

trevive
Nutrients for the Life of Your Hair

During prosecution of the TREVIVE mark, Han Beauty disclaimed "nutrients" and "hair," and stated that the French wording "tres vive" means "full of life." Han Beauty began selling hair care products bearing the TREVIVE mark through its salons in February of 1994. Han Beauty also has sold other hair care products in its salons, including many of Alberto–Culver's TRES—products described above and hair care products from other suppliers.

Before the Board, Alberto–Culver opposed Han Beauty's TREVIVE mark under § 2(d) of the Trademark Act, 15 U.S.C. § 1052(d) (1994), alleging a likelihood of confusion with Alberto–Culver's TRES—prefix marks. The Board made the following findings: both Alberto–Culver and Han Beauty use their marks with identical goods; both parties' goods move through the same channels of trade to the same purchasers; and both parties' goods are inexpensive and likely to be bought on

impulse. The Board further determined that the dominant TREVIVE portion of Han Beauty's mark and Alberto–Culver's TRES—prefix marks sound like and look like French terms or French-derived terms. Resolving doubts about consumer confusion in favor of Alberto–Culver, the prior user, the Board concluded that Han Beauty's "mark, when considered in its entirety, is sufficiently similar to [Alberto–Culver's] family of TRES—prefix marks in terms of sound and overall commercial impression that, when applied to identical, relatively inexpensive hair care products, confusion is likely to occur in the marketplace." Han Beauty appeals.

## II.

■ This court upholds the Board's factual findings if supported by substantial evidence. *Recot, Inc. v. M.C. Becton,* 214 F.3d 1322, 1327, 54 USPQ2d 1894, 1897 (Fed.Cir.2000) (citing *Dickinson v. Zurko,* 527 U.S. 150, 165, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d 1930, 1937 (1999)); *In re Gartside,* 203 F.3d 1305, 1315, 53 USPQ2d 1769, 1775 (Fed.Cir. 2000). This court reviews the Board's legal conclusions without deference. *Recot,* 214 F.3d at 1327.

■ "Whether likelihood of confusion exists is a question of law, based on underlying factual determinations." *Recot,* 214 F.3d at 1326; *In re Dixie Restaurants, Inc.,* 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed.Cir.1997). The Board determines likelihood of confusion on a case-specific basis, using the factors set forth in *In re E.I. DuPont DeNemours & Co.,* 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A.1973). *Recot,* 214 F.3d at 1326. While it must consider each factor for which it has evidence, the Board may focus its analysis on dispositive factors, such as similarity of the marks and relatedness of the goods. *Dixie Restaurants,* 105 F.3d at 1406–07.

■ At the outset, this court examines the Board's treatment of Alberto–Culver's marks as a family of marks, recognizing that the public perception of the relatedness of the TRES—family marks may have arisen before the filing date of the TREVIVE mark. "A family of marks is a group of marks having a recognizable common characteristic...." *J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 1462, 18 USPQ2d 1889, 1891 (Fed.Cir.1991). A family of marks only arises if the purchasing public recognizes that the common characteristic is indicative of a common origin of the goods. *Id.*

This court notes that Han Beauty stipulated before the Board that Alberto–Culver "has created a family of marks with the prefix 'TRES—.'" The record does not show that Han Beauty asserted any temporal or other limitation on its stipulation before the Board. The record shows that Alberto–Culver had marketed multiple TRES—prefix marks for at least thirty years before 1994. Most of Alberto–Culver's TRES—prefix marks appeared in the marketplace at least eight years before Han Beauty's 1994 filing date. Han Beauty's stipulation and other evidence of record provide substantial evidence to support the Board's conclusion that the TRES—family of marks exists and arose before Han Beautys filing date.

■ This court further examines whether the Board properly assessed the dimensions of the protection it afforded the TRES—family element. Specifically, the Board construed the TRES—family element to be similar in sound to Han Beauty's mark, wherein the TRE—prefix in TREVIVE is pronounced "TRAY." A declaration in the record, however, notes that consumers generally pronounce the TRES—prefix in two Alberto–Culver marks—TRESPAC and TRESEMME—as "TRESS." This declaration raises a question about the proper interpretation, and thus scope of coverage, afforded the TRES—prefix family. If in all marks the prefix is pronounced "TRESS," the family may differ in sound from Han Beauty's mark.

The Board's finding that the marks are similar in sound is a factual determination. Accordingly, this court cannot disturb that finding if supported by substantial evidence in the record. *Recot,* 214 F.3d at 1327. The Board relied on the following declaration of a professor of the French language at the University of Illinois, Chicago:

Based upon its construction and appearance, I believe the term "TreVive" will be perceived as a French word or phrase meaning very lively or very alive, and pronounced TRAY–VIVE. TRE would be understood or heard as phonetically equivalent to the French adverb TRES, meaning very; vive is an adjective meaning lively.

TRESemmé and other terms beginning with TRES also are French in sound and appearance and would be perceived as French or French-derived terms. As noted above, TRES is an adverb meaning very, and it is usually without an accent when written in capital letters. The use of the accent over the final "e" in Tresemmé gives the term a French appearance. "Gelée" and "mousse" are French words and would be perceived as such.

Since "s" in Tres is silent, TRES and TRE are phonetically equivalent. TRES is pronounced TRAY.

The Board also relied on evidence that Alberto–Culver adopted several TRES—prefix marks after TRESEMME to "exploit the popularity of European hair styling products by employing the formative TRES meaning 'very' in French, and using that formative to create French sounding marks." In this vein, Alberto–Culver has also used various TRES—slogans in advertising, including "TRESprofessional, TRESprofitable, TRESemmé" and "TRESprofessional, TRESEuropean, TRESchic." Alberto–Culver has also sold its products in black containers with the term "European" on the labels to enhance the "European" image of the products.

Substantial evidence also supports the Board's finding that consumers would perceive TREVIVE as a French-derived term. Sal Romeo, the national sales director for the products sold under the TREVIVE mark stated, "I just think [TREVIVE] had almost a continental French flare [sic] to it which I think is nice...." Accordingly, substantial evidence supports the Board's finding that the TRES—family carries the French pronunciation "TRAY" and thus is similar in sound to the opposed Han Beauty mark. Moreover, substantial evidence supports the Board's finding that TREVIVE NUTRIENTS FOR THE LIFE OF YOUR HAIR and the members of the TRES—family of marks create similar commercial impressions.

In upholding the Board's finding, this court takes into account decisions that have limited the scope of pleaded family elements to exclude terms with different features. *See, e.g., Witco Chem. Co. v. Whitfield Chem. Co.,* 57 C.C.P.A. 804, 418 F.2d 1403, 164 USPQ 43 (1969); *Polaroid Corp. v. Richard Mfg. Co.,* 52 C.C.P.A. 978, 341 F.2d 150, 144 USPQ 419 (1965). In *Witco Chemical,* the Court of Customs and Patent Appeals affirmed the decision of the Board that several WHIT—prefix marks were not likely to cause confusion with several WIT—prefix marks. *Witco Chem.,* 418 F.2d at 1407. Our predecessor court relied on factors not present in this case, namely differences between the nature and character of the goods, differences in channels of trade, and differences in the intended purchasers at issue in that case. *Id.* at 1405. In fact, our predecessor court emphasized that sophisticated consumers would distinguish between the goods bearing the WHIT—and WIT—prefixes. *Id.* at 1406. Therefore, our predecessor agreed with the Board that the record did not warrant treatment of the WIT—marks as a family of marks. *Id.* at 1406. Under similarly different circumstances in *Polaroid,* Polaroid did not show that POLA—was a family element. *Polaroid Corp. v. Richard Mfg. Co.,* 52 C.C.P.A. 978, 341 F.2d 150, 152, 144 USPQ 419, 420–21 (1965). As discussed above, substantial evidence supports the Board's

finding that the TRES—prefix is a family element. Accordingly, distinctions prevent our predecessor court's cases from undermining the Board's likelihood of confusion determination in this case. After all, likelihood of confusion depends on "the particular facts of the present case." *Witco Chem.*, 418 F.2d at 1405.

This court notes that the Board did not make specific findings about each of the *DuPont* factors. Thus, the Board made its determination without expressly commenting on the strength of the TRES—family element or the absence of evidence of actual confusion. As discussed above, the Board need not discuss every factor, but may focus its analysis on dispositive factors, such as similarity of the marks and relatedness of the goods. *Dixie Restaurants*, 105 F.3d at 1406–07.

Moreover, while the Board did not make explicit findings about the strength of the TRES—family element, the Board's opinion reveals that the Board considered this factor. The Board stated that it recognized the suggestive nature of the term "tress" (a long lock of hair) as applied to hair care products. The Board also noted that Alberto–Culver had made $450 million in sales of its TRES—line of products since 1977 and that it had expended $20 million in advertising its TRES—line of products since 1984. Finally, as the Board noted, Han Beauty stipulated that Alberto–Culver had established a family of marks, indicating at a minimum that the family element TRES—is indicative of the common origin of Alberto–Culver's TRES—line of goods. *See J & J Snack Foods*, 932 F.2d at 1462.

The record contains no evidence of actual confusion. The record does show that Han Beauty's products and Alberto–Culver's products were both sold in Han Beauty's salons. While extended periods of side-by-side sales without actual confusion may tend to refute a likelihood of confusion, the Board did not err in failing to address the lack of actual confusion in this case. After all, Han Beauty submitted no evidence of the length of time both marks appeared in its salons or the circumstances under which the salons marketed both marks. While the apparent lack of actual confusion evidence in the record may marginally favor Han Beauty even without full explanation of the circumstances of the marks appearing in the same salons, the Board did not err in focusing on other more dominant factors. *See Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1571, 218 USPQ 390, 395–96 (Fed.Cir.1983) (discounting an absence of actual confusion because "different factors may play dominant roles from case to case").

The Board discussed evidence of third-party uses. In its discussion, however, the Board erroneously stated that Han Beauty had used the marks TREVOR SORBIE PROFESSIONAL and design, and TRES-SA and design. In actuality, third parties had used these marks; Han Beauty had only sold the products in its stores. As the Board recognized, the record includes no evidence about the extent of those uses. The probative value of this evidence is thus minimal. This court detects no reversible error in the Board's failure to distinguish between Han Beauty itself using the marks and its selling others' products in its stores.

## CONCLUSION

Because substantial evidence supports the Board's findings and its conclusion is correct, this court affirms the holding that confusion is likely between Han Beauty's TREVIVE NUTRIENTS FOR THE LIFE OF YOUR HAIR and design mark and Alberto–Culver's TRES—family of marks when the marks are applied to their respective goods. This court thus affirms the decision of the Board.

## COSTS

Each party shall bear its own costs.

*AFFIRMED*