NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1064
(Opposition No. 91/125,615)


THE UNIVERSITY OF SOUTH CAROLINA,

Appellant,

v.

UNIVERSITY OF SOUTHERN CALIFORNIA,

Appellee.


Neil C. Jones, Nelson Mullins Riley & Scarborough, LLP, of Greenville, South Carolina, argued for appellant. With him on the brief was Ashley B. Summer.

Scott A. Edelman, Gibson, Dunn & Crutcher LLP, of Los Angeles, California, argued for appellee. Of counsel on the brief was Michael S. Adler, Tantalo & Adler LLP, of Beverly Hills, California.

Appealed from: United States Patent and Trademark Office
                           Trademark Trial and Appeal Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1064
(Opposition No. 91/125,615)

THE UNIVERSITY OF SOUTH CAROLINA,

Appellant,

v.

UNIVERSITY OF SOUTHERN CALIFORNIA,

Appellee.

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED:  JANUARY 19, 2010

_____

Before MAYER and RADER, <u>Circuit Judges</u>, and WILKEN, <u>District Judge</u>.[*]

WILKEN, <u>District Judge</u>.

The University of South Carolina appeals from a final decision of the Trademark Trial and Appeals Board refusing registration of its Carolina Baseball Logo mark, <u>see</u> <u>Univ. of S. Cal. v. The Univ. of S. Carolina</u>, 2008 WL 3333839 (T.T.A.B.), and granting summary judgment against South Carolina on its counterclaim for cancellation of a trademark registration held by the University of Southern California.  <u>Univ. of S. Cal. v. Univ. of S. Carolina</u>, 2003 WL 21810812 (T.T.A.B.).  We <u>affirm</u> both decisions.

---

[*]        Honorable Claudia Wilken, District Judge, United States District Court for the Northern District of California, sitting by designation.

BACKGROUND

South Carolina filed U.S. Trademark Application Serial No. 75,358,031, seeking registration of its Carolina Baseball Logo mark, shown below:



South Carolina sought registration for use of the mark on "clothing, namely, hats, baseball uniforms, T-shirts and shorts," which are defined as Class 25 goods.[1]  See 37 C.F.R. § 6.1.   The trademark examiner, finding that the mark appeared entitled to registration, published it for opposition.

Southern California opposed registration of South Carolina's mark.  Southern California argued, among other things, that the registrations for its own Standard Character Mark (Registration No. 1,844,953 ('953 Registration)) and Athletic Interlock Mark (Registration No. 2,683,137 ('137 Registration)) had priority over South Carolina's proposed registration and that South Carolina's proposed mark would create a likelihood of confusion with the '953 and '137 Registrations.  Southern California's '953 Registration protects the letters "SC" in standard character form, and its '137 Registration protects the mark shown below:

---

[1] We refer, as did the trademark examiner and the Trademark Trial and Appeals Board, to classes of goods as defined by the International Classification Schedule, provided in 37 C.F.R. § 6.1.



South Carolina counterclaimed for cancellation of Southern California's '953 Registration under Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a), asserting that the letters "SC" falsely suggest an association with the State of South Carolina.

The Board held that South Carolina lacked standing to bring the cancellation counterclaim and, accordingly, granted summary judgment in favor of Southern California. The Board stated that, even if South Carolina had standing, the Board would nonetheless grant summary judgment against it because it did not establish a genuine issue of fact on whether the initials "SC" are uniquely and unmistakably associated with the State of South Carolina.

The Board refused registration of South Carolina's mark under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), finding that it would create a likelihood confusion with Southern California's registrations. Among other things, the Board based its conclusion on its findings that South Carolina's mark and Southern California's Standard Character Mark were legally identical, that the marks would appear on the same classes of goods in the same channels of trade and that some consumers would exercise little care in making purchases.

We have jurisdiction over South Carolina's appeal pursuant to 15 U.S.C. § 1071(a)(1) and 28 U.S.C. § 1295(a)(4)(B).

DISCUSSION

The Board's legal conclusions, which include its determination that a likelihood of confusion exists, are reviewed <u>de novo</u>. <u>In re Chatam Int'l, Inc.</u>, 380 F.3d 1340, 1342 (Fed. Cir. 2002). The factual underpinnings of the Board's legal determinations are reviewed for substantial evidence. <u>Id.</u> Evidence is substantial if "a reasonable person might find that the evidentiary record supports the agency's conclusion." <u>Id.</u> (quoting <u>On-Line Careline, Inc. v. Am. Online, Inc.</u>, 229 F.3d 1080, 1084 (Fed. Cir. 2000)).

I.     Refusal to Register South Carolina's Mark Based on a Likelihood of Confusion

The factors set forth in <u>Application of E.I. DuPont DeNemours & Co.</u>, 476 F.2d 1357, 1361 (C.C.P.A. 1973), guide the analysis to determine whether a mark is likely to confuse. South Carolina challenges the Board's decision with regard to the third, fourth and eighth <u>DuPont</u> factors, which address the similarity of trade channels, the care consumers employ when purchasing goods and the absence of evidence of actual confusion. South Carolina does not appeal, however, the Board's findings that the marks were legally identical and that the marks would appear on the same classes of goods.

A.  Third Factor: Channels of Trade

Southern California's '953 Registration limits the use of the mark to goods sold in certain trade channels. Class 25 goods, such as sweatshirts and T-shirts, bearing the mark are limited to "university controlled" trade channels; various other collegiate merchandise in Classes 6, 18 and 24 are limited to "university authorized" trade channels. Because the Board found that the "university controlled" restriction would preclude purchasers from encountering South Carolina's and Southern California's

marks on Class 25 goods in the same trade channel, the Board did not find any likelihood of confusion as to the Class 25 goods identified in the '953 Registration. However, the Board interpreted "university authorized" to mean "any trade channels which are or could be authorized or approved by California." 2008 WL 3333839, at *8. Given this broad reading, the Board found that South Carolina's and Southern California's marks would appear on Class 6, 18 and 24 goods in the same channels of trade. The Board therefore concluded that the third DuPont factor, concerning channels of trade, weighed in favor of finding a likelihood of confusion.

South Carolina argues that the Board's interpretation of the "university authorized" restriction rendered it "unlimited and meaningless." Appellant's Opening Br. at 39. Instead, South Carolina asserts that the "university authorized" restriction was meant to have the same meaning as the more restrictive "university controlled" limitation. We disagree.

On the application that eventually ripened into the '953 Registration, Southern California stated that its Standard Character Mark would be used on "goods being offered and sold to persons desiring to associate themselves with the University of Southern California." J.A. 4795. The examiner initially rejected Southern California's application, finding that it would cause a likelihood of confusion with a previously registered trademark held by Snake Creek Manufacturing for use on Class 25 goods. In response, Southern California amended its application to limit its Class 25 goods, as well as its Class 6, 18 and 24 goods, to "university authorized" outlets. The examiner apparently still found this limitation insufficient to prevent a likelihood of confusion as to the Class 25 goods. In its final revision, Southern California altered the Class 25 goods

limitation to state that sweatshirts and T-shirts bearing its mark would be restricted to "university controlled" outlets. After this change, the examiner allowed Southern California's mark to publish.

This prosecution history reveals little on the precise meaning of "university authorized." However, the history shows that, at the least, the examiner interpreted "university authorized" to mean something different from "university controlled." Had the two phrases had the same meaning, as suggested by South Carolina, the examiner would not have allowed Southern California's mark to publish.

Although we agree that "university authorized" does not substantially restrict the trade channels in which Southern California's Class 6, 18 and 24 goods appear, the Board's definition of the phrase as "any trade channels which are or could be authorized or approved by California" is supported by its plain meaning. In contrast, the '953 Registration's prosecution history contradicts South Carolina's assertion that "university authorized" means the same as "university controlled." As a result, we do not find error in the Board's interpretation of the phrase and, accordingly, affirm the Board's finding that South Carolina's goods would appear in the same trade channels as goods bearing Southern California's Standard Character Mark.

B. Fourth Factor: Conditions of Purchase

As noted above, the Board found that the fourth DuPont factor, which addresses conditions of purchase for goods, weighed in favor of finding a likelihood of confusion. The Board first determined that the goods at issue would be relatively inexpensive. Then, the Board found that the goods would be subject to purchase by three categories of consumers. The Board found that one group of purchasers would "have a loyalty to

and affinity for a particular school" and would exercise a degree of care in making their purchases. 2008 WL 3333839, at *9. However, the Board found that there were two groups of consumers that would be less sophisticated and exercise less care in making their purchases: consumers purchasing the goods as gifts and "new or casual fans." Given the inexpensive nature of the goods, the Board found that the gift-purchasing consumers and "new or casual fans" would be susceptible to confusing the two schools' marks.

South Carolina asserts that the Board's determination is not adequately supported by the record. In particular, South Carolina maintains that no substantial evidence supports the Board's conclusion that the gift-purchasing consumers would not exercise care. Further, South Carolina argues that the Board lacked evidence to support the existence of uninformed "new or casual fans."

We agree that the Board's conclusions with regard to these two groups are not supported by substantial evidence. With regard to uninformed gift-purchasing consumers, the Board appears to have assumed that family members who may purchase gifts for South Carolina alumni, staff, faculty and students "are not necessarily knowledgeable." 2008 WL 3333839, at *10. The evidence that the Board cited for this finding did not address such consumers' level of knowledge. J.A. 3178. As for the "new or casual fans," it appears that the Board based its conclusion entirely on the testimony of a witness called by South Carolina that a school's victory in a national championship would attract new, first-time purchasers, who "may or may not be" sophisticated in making their purchases. J.A. 9470-71. Thus, the Board's findings on the care exercised by gift-purchasing consumers and casual fans rested on speculation.

Speculation does not constitute substantial evidence. See, e.g., Novosteel SA v. United States, 284 F.3d 1261, 1276 (Fed. Cir. 2002).

If the Board erred in its conclusion on this DuPont factor, however, its error was harmless. As noted above, the Board found that the marks were legally identical and would appear on the same classes of goods in the same trade channels. These factors, on their own, support a finding of likelihood of confusion. See, e.g., Cunningham v. Laser Corp., 222 F.3d 943, 948-49 (Fed. Cir. 2000) (finding the Board's failure to consider consumer sophistication harmless when there was a strong similarity of marks and identity of goods). Thus, even if the Board erred in its finding that certain consumers were unsophisticated, this error would not require reversal of the Board's decision on the likelihood of confusion.

C. Eighth Factor: Absence of Evidence of Actual Confusion

South Carolina challenges the Board's finding that the eighth DuPont factor, the "length of time during and conditions under which there has been concurrent use without evidence of actual confusion," 476 F.2d at 1361, weighed only slightly in favor of South Carolina's position. It accorded this factor little weight because the schools were located on separate coasts and in different athletic conferences and, as a result, there had not been "any significant opportunity for actual confusion to have occurred." 2008 WL 3333839, at *14. The Board found insufficient evidence to conclude that "the parties' marketing of their respective goods in each other's geographic areas has been so extensive that the absence of evidence of actual confusion is factually surprising or legally significant." Id.

South Carolina maintains that the absence of evidence of actual confusion "creates a strong inference that there is no likelihood of confusion." CareFirst of Md., Inc. v. First Care, P.C., 434 F.3d 263, 269 (4th Cir. 2006). Without deciding whether CareFirst reflects this Court's precedent,[1] its facts are distinguishable from those here. That case implicated a much narrower geographical region than the coast-to-coast gap between South Carolina and Southern California. Thus, in CareFirst, the absence of evidence of actual confusion was more probative than the absence of such evidence here.

This Court's decision in Olde Tyme Foods, Inc. v. Roundy's Inc., 961 F.2d 200 (Fed. Cir. 1992), does not support South Carolina's position. There, on a motion for summary judgment, the Board inferred that the parties did business in different geographic regions, despite uncontested evidence in the record showing otherwise. Id. at 204. In addition, this erroneous inference was adverse to the non-moving party, contrary to the requirement that all inferences be made in favor of the non-moving party when a court decides a motion for summary judgment. Id. Given these errors, this Court reversed and remanded the matter for further proceedings. Here, as noted above, Southern California's opposition was tried before the Board, not decided on a motion for summary judgment. The Board found that, given the evidence, the absence of actual confusion was insignificant. At this stage, we review this determination for substantial evidence, not whether the Board made the correct inference.

---

[1] The Fourth Circuit does not apply the DuPont factors when conducting a likelihood of confusion analysis. See CareFirst, 434 F.3d at 267-68. In particular, its analysis does not explicitly consider the "conditions under which there has been concurrent use without evidence of actual confusion," which is required under the eighth DuPont factor. 476 F.2d at 1361.

After reviewing the record, we agree with the Board's decision not to weigh heavily the absence of evidence of actual confusion. The conditions under which there has been no actual confusion render its absence largely insignificant. Although South Carolina identifies instances in which Southern California's trademark investigator observed both schools' merchandise in close proximity at various stores, this evidence is only marginally probative because the record provides no insight into whether this commingling occurred over a substantial period of time. See Han Beauty, Inc. v. Alberto-Culver Co., 236 F.3d 1333, 1338 (Fed. Cir. 2001). And even though many national retailers sell both schools' goods, there is no evidence that these retailers routinely display and sell the merchandise at the same store location, let alone side-by-side. Without evidence that the two marks appeared together for a significant length of time, the Board correctly accorded little weight to the absence of evidence of actual confusion.

II.     South Carolina's Cancellation Counterclaim

The Board granted summary judgment against South Carolina on its cancellation counterclaim under Section 2(a) of the Lanham Act on the basis that the school lacked standing. South Carolina challenges this finding. Although we agree that the Board took an unnecessarily limited view of standing, we nonetheless affirm the Board's grant of summary judgment because South Carolina did not show a genuine issue of material fact for trial.

Under the Lanham Act, "any person who believes that he is or will be damaged" by a mark's suggestion of a false association may file a petition for cancellation. 15 U.S.C. §§ 1052(a), 1064(3); see also Cunningham, 222 F.3d at 945 ("Standing . . .

requires only that the party seeking cancellation believe that it is likely to be damaged by the registration.").  Additionally, a cancellation petitioner must satisfy two judicially-created requirements: the petitioner must show (1) a "real interest" in the proceeding and (2) a reasonable basis for the belief that the challenged mark has caused or will cause damage.  Ritchie v. Simpson, 170 F.3d 1092, 1095 (Fed. Cir. 1999).  To show a real interest, the petitioner must "have a direct and personal stake in the outcome" of the cancellation.  Id.  Standing will not be granted to "'mere intermeddlers' who do not raise a real controversy . . . ."  Id.

The Board apparently believed that the University of South Carolina is not an agency of the State of South Carolina and, as a result, the University of South Carolina lacked standing to assert a Section 2(a) claim based on a false association between the University of Southern California and the State of South Carolina.  Without deciding whether the University of South Carolina is an agent of the State, we conclude that the Board's restrictive interpretation of standing under the Lanham Act is incorrect.  To establish standing, the University of South Carolina only needed to show that it had a reasonable belief that it would be damaged by Southern California's Standard Character Mark registration, and that it had a direct and personal stake in the cancellation of that registration.  It did so.  The University of South Carolina sold goods bearing its mark, which gave it a commercial interest in registering its mark and a reasonable belief in likely damage.  See Cunningham, 222 F.3d at 945 (stating that a "belief in likely damage can be shown by establishing a direct commercial interest").  The mark's registration was prevented by Southern California Standard Character Mark; this provided South Carolina with a stake in the cancellation of Southern California's

registration.  See Lipton Indus. v. Ralston Purina Co., 670 F.2d 1024, 1029 (C.C.P.A. 1982).  Thus, South Carolina had a direct and personal stake in its cancellation petition and a reasonable belief in damage.

Although we conclude that South Carolina had standing, we affirm the Board's decision to grant summary judgment.  To prevail on a Section 2(a) Lanham Act claim for cancellation based on false association, a party must show that the challenged mark is "unmistakably associated" with another person or institution.  See Univ. of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co., Inc., 703 F.2d 1372, 1376-77 (Fed. Cir. 1983); see also 15 U.S.C. § 1052(a).  South Carolina asserted that Southern California's use of "SC" falsely suggested an affiliation with the State of South Carolina. Thus, to avoid summary judgment, South Carolina must have shown that there was a genuine issue for trial on whether the initials "SC" "point uniquely" to the State.  Univ. of Notre Dame Du Lac, 703 F.2d at 1377.

As it did before the Board, South Carolina points to evidence that the public associates the initials "SC" with the State of South Carolina.  We agree that "SC" may refer to the State of South Carolina.  But as the evidence offered by Southern California demonstrates, "SC" refers to many entities aside from the State.  Indeed, South Carolina, in the context of another issue, submitted evidence showing that at least sixteen other universities and colleges represent themselves as "SC."  J.A. 33.  In light of this evidence, South Carolina did not satisfy its burden on summary judgment.  Even drawing all reasonable inferences in favor of South Carolina, evidence showing that the initials "SC" could refer to the State of South Carolina does not create a genuine issue on whether the initials uniquely point to the State.  On this basis, we affirm the Board's

decision to grant summary judgment against South Carolina on its cancellation counterclaim.

## CONCLUSION

Because the Board did not commit reversible error, we affirm its decision to refuse registration of South Carolina's mark and its grant of summary judgment against South Carolina on its cancellation counterclaim.