THIS DECISION IS A
PRECEDENT OF THE
TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

Skoro

Mailed: February 5, 2010

Cancellation No. 92030882
Opposition No. 91165417

TEXAS DEPARTMENT OF
TRANSPORTATION

v.

RICHARD TUCKER

**Before Quinn, Kuhlke and Mermelstein,
Administrative Trademark Judges.**

By the Board:

Richard Tucker (hereinafter "Tucker") owns U.S. Registration No. 1915026[1] for DON'T MESS WITH TEXAS (in typed form) for various items of clothing[2] and application Serial No. 76121980 for DON'T MESS WITH TEXAS for additional clothing items.[3]

---

[1] Issued August 29, 1995; Section 8 accepted and Section 9 renewal granted; renewed June 10, 2006.

[2] The identification of goods states: "Clothing specifically women's tops, T-shirts, blouses, skirts, dresses, pants, shorts, caps, coats, jackets and sportswear, and men's shirts, T-shirts, tops, pants, shorts, caps, coats and jackets," in Class 25, claiming dates of first use and first use in commerce of October 6, 1993.

[3] Filed September 5, 2000, for "Clothing, namely, boots, shoes, belts, hats, caps, scarves, neckties," in Class 25; claiming dates of first use and first use in commerce of June 1, 1999.

On August 28, 2000, the Texas Department of Transportation (hereinafter "TxDOT"), filed a petition to cancel the registration and, on August 5, 2004, it filed a notice of opposition against Tucker's pending application, claiming, in both proceedings, priority of use and that Tucker's marks are likely to cause confusion with TxDOT's identical mark, also in typed or standard character form, in its four U.S. Registrations and a pending application for its promotional services and various goods including clothing.[4]  These proceedings later were consolidated.

---

[4] U.S. Reg. No. 2616831, issued on September 10, 2002 for "promoting the beautification of Texas highways and the public awareness of the need for litter prevention and litter cleanup through the development and dissemination of educational materials and public service announcements, and the development, planning and implementation of anti-litter programs" in Class 42, claiming dates of first use and first use in commerce of November 30, 1985; Section 8 and 15 affidavits accepted and acknowledged, respectively, on May 23, 2008.

U.S. Reg. No. 2627196, issued on October 1, 2002 for "printed matter and paper products, namely stickers, decals, bumper stickers, paper food containers, paper bags, plastic trash bags, plastic litter bags, grocery bags, promotional materials, namely, pamphlets and brochures in the fields of litter prevention and litter cleanup" in Class 16, claiming dates of first use and first use in commerce of March 31, 1986; Section 8 and 15 affidavits accepted and acknowledged, respectively, on November 9, 2008.

U.S. Reg. No. 2619887, issued on September 17, 2002 for "decorative magnets" in Class 9, claiming dates of first use and first use in commerce of March 9, 2000; "jewelry, namely lapel pins" in Class 14, claiming dates of first use and first use in commerce April 1, 1995; "plastic key chains" in Class 20, claiming dates of first use and first use in commerce of April 5, 1997.

U.S. Reg. No. 3149283, issued on September 26, 2006 for "beverage containers, namely mugs and cups" in Class 21, claiming dates of first use and first use in commerce of December 14, 2004.

Serial No. 76160856, filed November 7, 2000 for "clothing, namely shirts, hats and caps" in Class 25, claiming dates of first use and first use in commerce of April, 1986.

Tucker has denied the salient allegations of both complaints.[5]

This case now comes up on TxDOT's motion for summary judgment on its claim that Tucker's mark is likely to cause confusion, mistake, and/or falsely suggest to the public that there is an association between TxDOT and Tucker, and that actual confusion has occurred due to the identity of the parties' marks, which are used in connection with identical or closely related goods. (Brief at 4).[6] TxDOT argues there is no genuine issue as to its priority of use and that based on the identical nature of the marks, the respective identifications of goods for the parties' respective applications and registrations, and on other evidence of record, there is no genuine issue of material fact as to the likelihood of confusion. Accordingly, TxDOT seeks entry of judgment granting its petition to cancel the Tucker registration and sustaining its opposition to the Tucker application.

---

[5] Tucker, in his answer to the notice of opposition, filed a "counterclaim for opposition" to TxDOT's pending application. No such procedure exists. In that TxDOT's application has not yet been published for opposition, and is suspended pending the outcome of this proceeding, Tucker necessarily is not able to oppose the application at this time.

[6] The statutory claim under Section 2(d) of the Trademark Act, 15 U.S.C. 1052(d), is likelihood of confusion and the law is clear that proof of actual confusion is not necessary to find likelihood of confusion. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 218 USPQ 390, 396 (Fed. Cir. 1983). Of course, persuasive evidence of actual confusion is also evidence of likelihood of confusion.

Tucker argues that there are genuine issues of material fact and challenges TxDOT's evidence, thereby arguing against summary judgment.

The burden is on the party moving for summary judgment to demonstrate the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The evidence of record and any inferences which may be drawn from the underlying undisputed facts, must be viewed in the light most favorable to the non-moving party.  *See Olde Tyme Foods Inc. v. Roundy's Inc., 9*61 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).  In considering the propriety of summary judgment, the Board may not resolve issues of material fact against the non-moving party; it may only ascertain whether such issues are present.  *See Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993); and *Opryland USA, Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1993.

The Evidence of Record

Clearly, both parties claim use of, and have registered, the same mark, DON'T MESS WITH TEXAS.  In support of its claim of priority of use of the mark and its claim of likelihood of confusion, TxDOT has submitted two declarations with supporting exhibits:

(1) The declaration of Doris Howdeshell, Director of the Travel Information Division of the Texas Department of Transportation, stating TxDOT has used the mark in connection with its public service anti-litter campaign and to identify services and products, including clothing such as t-shirts, hats and caps in connection with the campaign beginning in November 1985 (Howdeshell Dec. ¶4); that there has been widespread dissemination of the program through use of the mark since that time (Howdeshell Dec. ¶5); that TxDOT first used the mark in connection with clothing at least as early as April 1986 (Howdeshell Dec. ¶6 & Ex. A2);[7] that since the airing of a commercial in 1987, the t-shirts featuring the mark have been one of its most popular campaign items (Howdeshell Dec. ¶6);[8] that the extensive media promotion of the mark and campaign has continued since 1986, and has featured famous celebrities (Howdeshell Dec. ¶12); that large sums of money have been expended on its promotion (Howdeshell Dec. ¶¶13, 14); that the slogan is promoted on its website (Howdeshell Dec. ¶17), and has received extensive media coverage and publicity[9] (Howdeshell

---

[7] The clothing items bearing the mark were sold and featured prominently in televised public service announcements (Ex. A3 to Howdeshell Dec.).

[8] The televised commercial featured two well known Dallas Cowboys football players wearing the DON'T MESS WITH TEXAS t-shirts. (Howdeshell Dec. ¶6).

[9] Exs. A9-A19 to the Howdeshell declaration are copies of articles dating back to 1986.

Dec. ¶18-19); that the campaign has received numerous awards and citations[10] (Howdeshell Dec.¶ 20); and that several surveys have reflected the public's identification of the mark and campaign with TxDOT (Howdeshell Dec. ¶¶23-28). Ms. Howdeshell also avers that she is aware of at least two instances of actual confusion between Tucker's use of the mark and TxDOT's use of the mark. (Howdeshell Dec. ¶¶29-31).

(2) The declaration of Christopher Graff, counsel for TxDOT, providing: the title and status copies of its existing registrations for DON'T MESS WITH TEXAS for its promotional services and related goods (Graff Dec. ¶¶3-6, Exs. B1-B4); the TARR database printout of TxDOT's pending application (Graff Dec. ¶8, Ex. B5);[11] statements regarding Tucker's earliest claimed date of first use of October 6, 1993 (Graff Dec. ¶11); Tucker's responses to TxDOT's interrogatories (Ex B9); Tucker's responses to TxDOT's requests for admissions[12] (Ex. to Reply Brief); and the

---

[10] Ex. A20 contains photographs of some of the awards received, dating back to 1986.

[11] Mr. Graff also provides the examining attorney's refusal of TxDOT's application in light of Tucker's registration and its subsequent suspension (Exs. B6 and B7).

[12] Tucker, having failed to timely file its responses to TxDOT's requests for admission, effectively admitted the requests. However, on October 21, 2009, the parties filed a stipulation to withdraw and amend Tucker's effective admissions by substituting responses. This stipulation is noted and granted and the substitute responses have been considered. References are to Tucker's Responses to TxDOT's request for admissions (R/A); and

results of various NEXIS searches conducted by Mr. Graff demonstrating an association of the mark with TxDOT rather than Tucker (Graff Dec. ¶¶17 and 18, Exs. B11 and B12)[13].

In his opposition to the motion for summary judgment, and in support of his argument that there are genuine issues of material fact, Tucker has provided his own affidavit, together with supporting exhibits. Tucker asserts that TxDOT's evidence fails to show opposer's actual date of its first use of the mark on clothing (Br. p. 4),[14] that there has not been significant use by TxDOT outside of Texas (Br. p. 6), and the instances of actual confusion are de minimis (Br. p. 7).[15] Mr. Tucker's affidavit provides a copy[16] of

responses to interrogatories (Interr.). The requests for admissions responses appear as an exhibit to TxDOT's Reply in support of its Motion for Summary Judgment and the interrogatories are provided as Ex. B9 to the declaration of Christopher Graff.

[13] Mr. Graff also submitted results of a USPTO database search designed to demonstrate the common practice of the use of public service slogans on items of clothing and registered as trademarks for the goods. (Dec. ¶¶19-22, Exs. B13-B15).

[14] Tucker points to TxDOT's photographs of the mark on shirts (Ex. A2 to the Dec. of Doris Howdeshell), and argues that the photos could have been taken at any time and there is no evidence of distribution, and that almost all of its evidence refers to TxDOT's litter campaign. (Br. 4-5).

[15] Tucker also argues in its brief that TxDOT has 'fraudulently' allowed unlicensed or 'unsupervised' use of its mark (Br. p. 8); that it delayed in registration of its marks altogether and institution of this proceeding until one day before Tucker's mark became incontestable (Br. p. 8-9); and that TxDOT has not registered its mark in Texas (Br. p. 9). In the absence of a counterclaim grounded on abandonment, any argument regarding naked licensing will not be considered. Further, any arguments about when and where TxDOT registered its mark do not go to the issue before the Board, namely, whether there is a genuine issue

his registration (Tucker Dec. ¶2, Ex. A1). In his declaration, Mr. Tucker avers: that he first used the mark in commerce on October 6, 1993, on clothing (Tucker Dec. ¶4), and he has provided copies of invoices for items in his "DON'T MESS WITH TEXAS" clothing line which are dated 1993 (Ex. A2);[17] that Tucker conceived of use of the mark while driving in Dallas and seeing TxDOT's highway anti-litter campaign sign and thought it was a good name for a western clothing line (Tucker Dec. ¶10); that he sells his line of clothing to retailers throughout the U.S. (Tucker Dec. ¶20); and that a review of the list of individuals licensed by the State of Texas to make "DON'T MESS WITH TEXAS" merchandise does not include any of the wholesale manufacturers or national retailers of clothing known to him (Tucker Dec. ¶20).[18]

---

of material fact as to the likelihood of confusion between the parties' marks and, if so, whether TxDOT has established the absence of a genuine issue of fact as to its priority of use.

[16] Tucker's registration is of record by virtue of it being the subject of the cancellation proceeding. 37 CFR § 2.122(b)(1).

[17] Ex. A3 contains copies of various invoices which Tucker attests are for items in his "DON'T MESS WITH TEXAS" clothing line, however, there is nothing on the invoices to indicate that they are for goods using the mark or sold by Tucker. The invoices are from "Richmar Fashions." Further, Tucker avers that Ex. A3 is a hang tag, however it appears that Ex. A2 may be the hang tag and is, in any event, illegible.

[18] Exs. A5-A10 are, according to Tucker, copies of displays and ads of Tucker's line of clothing.

Standing and Priority

As TxDOT has submitted status and title copies of its pleaded registrations, there is no genuine issue that TxDOT has established its standing to bring these actions. *King Candy Company v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974); *L.C. Licensing Inc. v. Berman,* 86 USPQ2d 1883, 1887 (TTAB 2008). Moreover, the suspension of TxDOT's application, pending final disposition of the involved Tucker application also evidences TxDOT's standing.

As for priority, there is a distinction to be drawn between the opposition proceeding and the cancellation proceeding. In the opposition, the issue of priority has been removed by virtue of TxDOT's submission of status and title copies of its pleaded registrations. *See King Candy, supra*, which explains that the Trademark Act requires consideration under Section 2(d) of an opposer's registration, regardless of whether the opposer is the prior user. By contrast, in the cancellation proceeding, priority is in issue. *See Brewski Beer Co. v. Brewski Brothers Inc.,* 47 USPQ2d 1281, 1283-84 (TTAB 1998)(In a cancellation proceeding where both parties have registrations, each can rely on the filing date of the application resulting in its registration, but the evidence of record otherwise determines priority).

9

Tucker has admitted that TxDOT has prior use of the mark (Request for Admissions (hereinafter "R/A") No. 72).[19] Therefore, priority in TxDOT is established, notwithstanding the previously-referenced argument by Tucker asserting that TxDOT's evidence fails to show opposer's actual date of its first use of the mark on clothing. *Sinclair Oil Corp. v. Kendrick*, 85 USPQ2d 1032, 1036 n.8 (TTAB 2007) (admission conclusively establishes the matter that is the subject of the request for admission; subsequent argument to the contrary in response to a motion for summary judgment insufficient to raise a genuine issue of material fact.) Moreover, the absence of any genuine issue of material fact regarding TxDOT's priority is established by the evidence showing TxDOT's use since 1986 of the registered mark DON'T MESS WITH TEXAS, for the goods and services identified in the registrations and pending application.

Having carefully considered the evidence and arguments submitted by the parties in connection with this motion for summary judgment, we find that Tucker has failed to demonstrate that there are any genuine issues of material fact as to priority and the likelihood of confusion between

---

[19] Request for Admission no. 72: "Admit that the use of 'DON'T MESS WITH TEXAS' on the T-shirt depicted in the photographic image on page 25 of the January 19, 1987 issue of TIME magazine (a photostatic copy of which is attached hereto and marked as Exhibit A) was prior to Registrant's first use of the 'DON'T MESS WITH TEXAS' mark." RESPONSE: ADMITTED

the marks, and that TxDOT therefore is entitled to judgment.

*See Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22

USPQ2d 1542 (Fed. Cir. 1992).

As stated by the Supreme Court in *Celotex:*

> The plain language of Rule 56(c) mandates
> the entry of summary judgment, after
> adequate time for discovery and upon
> motion, against a party who fails to make a
> showing sufficient to establish the
> existence of an element essential to that
> party's case, and on which that party will
> bear the burden of proof at trial.  In such
> a situation, there can be "no genuine issue
> as to any material fact," since a complete
> failure of proof concerning an essential
> element of the nonmoving party's case
> necessarily renders all other facts
> immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

Here, TxDOT's motion is strongly supported by

documentary evidence to establish the necessary elements for

a finding of a likelihood of confusion.[20]  There is no

genuine issue that the respective marks are identical (D's

R/A Resp. No. 32; D's Resp. to Interr. No. 6); that TxDOT

has used the mark on identical goods, including T-Shirts

(Howdeshell Dec. ¶6; Ex. A2; D's R/A Resp. Nos. 72 and 73)

and that the parties' other clothing items are related; that

---

[20] In determining whether there is a likelihood of confusion
between marks, there are thirteen evidentiary factors, which,
when of record, the Board must consider.  *See E. I. du Pont de
Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973).  The
likelihood of confusion analysis considers all *du Pont* factors
for which there is evidence of record but "may focus … on
dispositive factors, such as similarity of the marks and

TxDOT's mark is famous, well-known and has received significant publicity (D's R/A Resp. Nos. 77-79);[21] that it is common practice to put slogans on clothing, and that the public expects such[22] (D's R/A Resp. Nos. 20, 22 and 24).[23] Further, Tucker sent a cease and desist letter to one of TxDOT's licensees asserting a likelihood of confusion with

---

relatedness of the goods." *Han Beauty, Inc. v. Alberto-Culver Co.,* 236 F.3d 1333, 57 USPQ2d 1557, 1559 (Fed. Cir. 2001).

[21] TxDOT has a "massive and far reaching" public service campaign directed to anti-littering. The campaign has associated promotional services and items for distribution to the public including litter bags, bumper stickers, and t-shirts. TxDOT's public service announcements aired 73,000 times prior to 1993; between 1986 and 1993 TxDOT spent over $48 million in messages and $127 million in donated TV and radio ads. TxDOT has received publicity through magazine and newspaper articles during the same time period; and has received numerous awards since 1986. TxDOT's clothing items have been worn by performers in its advertisements. (Howdshell's Dec. ¶¶13 and 14).

[22] Tucker argues that TxDOT's use of the mark on clothing is ornamental and does not function as a trademark. The charge does not ring true, in view of Tucker's own registration of the mark, and pending application to register the mark, for such items; and Tucker has not explained why the parties' respective uses should be treated differently. Moreover, Tucker's own responses to TxDOT's requests for admissions undercut the charge, for Tucker has admitted that it is common practice to put slogans on clothing and that the public expects such association. (R/A No. 20, 22 and 24). Further, it is common knowledge, and a fact of which this Board has taken judicial notice, that the licensing of commercial trademarks for use on "collateral products" has become a part of everyday life. *See L.C. Licensing,* 86 USPQ2d at 1889 and *Turner Entertainment Co. v. Nelson,* 38 USPQ2d 1942, 1945-46 (TTAB 1996).

[23] Request for Admission No. 20: "Admit that it is a common practice for famous slogans or marks to be depicted on clothing." RESPONSE: ADMITTED. Request for Admission No. 22: "Admit that it is common for famous slogans or marks to be depicted on promotional items, such as wearing apparel" RESPONSE: ADMITTED. Request for Admission No. 24: "Admit that the public is conditioned to expect to see famous slogans or marks on promotional items, such as wearing apparel." RESPONSE: ADMITTED.

Tucker's mark (D's R/A Resp. Nos. 56-58). Finally, Tucker had prior knowledge of TxDOT's mark when he adopted it as his mark (D's R/A Resp. Nos. 8, 9, 11 and 13; Interr. No. 1).

Nothing Tucker has pointed to in his arguments against the motion give rise to a genuine issue of material fact regarding a likelihood of confusion. Tucker argues that the evidence of actual confusion[24] is de minimis. We agree that the evidence may not conclusively establish actual confusion. *Cf. Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2030 (Fed. Cir. 1993) ("In this case, the Flachs were not actually confused; they only 'wondered' at a possible relationship."). However, such evidence is unnecessary to our conclusion that there is no genuine issue regarding likelihood of confusion. Tucker also argues that TxDOT has not made significant use of its mark outside of Texas. Accepting this assertion as true for the sake of deciding the pending motion, it does not aid Tucker, as prior significant use in Texas, a use not in genuine dispute, is sufficient. *See First Niagara Insurance Brokers Inc. v. First Niagara Financial Group Inc.*, 476 F.3d

---

[24] Howdeshell Dec. ¶¶ 29-31; Request for Admissions No. 42: "Admit that Registrant has received inquiries as to whether Registrant had permission from Petitioner to use "DON'T MESS WITH TEXAS." RESPONSE: ADMITTED; Request for Admission No. 44: "Admit that in August of 2600 [sic] Registrant received an inquiry from a person at the Dallas Apparel Mart as to whether Registrant was associated with Petitioner." RESPONSE: ADMITTED.

867, 81 USPQ2d 1375, 1378 (Fed. Cir. 2007) (an opposer may rely on prior intrastate use of its mark), and *National Cable Television Association Inc. v. American Cinema Editors Inc.*, 937 F.2d 1572, 19 USPQ2d 1424, 1429 (Fed. Cir. 1991) (a petitioner may rely on prior intrastate use of its mark).

Accordingly, TxDOT's motion for summary judgment is hereby granted, the petition to cancel is granted, and the opposition is sustained.  Registration No. 1915026 will be cancelled in due course, and application Serial No. 76121980 is refused registration.

.oOo.